No. 84–5079.   STEBBING *v.* MARYLAND.   Ct. App. Md.   Certiorari denied.

JUSTICE BRENNAN, dissenting.

Adhering to my view that the death penalty is in all circumstances cruel and unusual punishment prohibited by the Eighth and Fourteenth Amendments, *Gregg* v. *Georgia,* 428 U. S. 153, 227 (1976), I would grant certiorari and vacate the death sentence in this case.

JUSTICE MARSHALL, dissenting.

The issue presented by this petition is the constitutionality of the Maryland capital punishment statute, which (1) bars consideration of certain mitigating evidence when the sentencer decides whether to impose a life or death sentence; (2) prevents the sentencer from making an independent determination as to whether death is a proper penalty; and (3) may easily be understood to impose on the defendant the burden of proving that death is not appropriate in his case.   Because these three aspects of the Maryland death penalty statute raise profound questions of compliance with this Court's holdings in *Eddings* v. *Oklahoma,* 455 U. S. 104 (1982), and *Lockett* v. *Ohio,* 438 U. S. 586 (1978), I would grant the petition to review the constitutionality of the statute.

I

In *Lockett* v. *Ohio,* CHIEF JUSTICE BURGER, writing for a plurality of the Court, stated:

> "[W]e conclude that the Eighth and Fourteenth Amendments require that the sentencer . . . not be precluded from

considering, *as a mitigating factor*, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." *Id.*, at 604 (emphasis in original).

The opinion recognized that "the imposition of death by public authority is . . . profoundly different from all other penalties," and that the sentencer therefore must be free to give "independent mitigating weight to aspects of the defendant's character and record and to circumstances of the offense proffered in mitigation." *Id.*, at 605. As we later said: "By holding that the sentencer in capital cases must be permitted to consider any relevant mitigating factor, the rule in *Lockett* recognizes that a consistency produced by ignoring individual differences is a false consistency." *Eddings* v. *Oklahoma, supra,* at 112.

In *Eddings*, this Court reaffirmed that a sentencer may not be barred from considering all evidence of mitigating factors when it renders its decision on sentencing. The trial judge there had declined to consider the fact of Eddings' violent background, on which evidence had been introduced, as a mitigating circumstance. In reversing Eddings' death sentence, the Court observed,

> "Just as the State may not by statute preclude the sentencer from considering any mitigating factor, neither may the sentencer refuse to consider, *as a matter of law*, any relevant mitigating evidence. In this instance, it was as if the trial judge had instructed a jury to disregard the mitigating evidence Eddings proffered on his behalf. The sentencer, and the Court of Criminal Appeals on review, may determine the weight to be given relevant mitigating evidence. But they may not give it no weight by excluding such evidence from their consideration." 455 U. S., at 113–115 (emphasis in original).

It therefore is now well established that the Constitution requires that the sentencing body in a capital case not be precluded by statute from considering all relevant mitigating evidence and inferences. Put another way, a jury must be free to conclude that any relevant mitigating evidence amounts to a factor that mitigates the severity of the punishment a defendant ought to suffer. Yet the Maryland statute denies the sentencer the constitutionally required latitude.

## II

Like most death penalty statutes, the Maryland statute begins by requiring the sentencing authority—either a judge or a jury—first to consider whether the prosecutor has proved, beyond a reasonable doubt, the existence of any of 10 statutory aggravating circumstances. Md. Ann. Code, Art. 27, § 413(d) (1982 and Supp. 1983). If the sentencer does not find at least one aggravating factor, the sentence must be life imprisonment. § 413(f). If the sentencer finds that one or more aggravating factors exist, it then must determine whether the defendant has proved, by a preponderance of the evidence, that any of eight statutory mitigating factors exist. § 413(g); 299 Md. 331, 361, 473 A. 2d 903, 918 (1984). If no mitigating factors are found, the sentencer must impose death.[1] If, instead, the sentencer has found at least one mitigating factor, it must determine, by a preponderance of the evidence, whether the proven mitigating factors outweigh the aggravating circumstances. § 413(h). If they do, the sentencer must impose a life sentence. If the mitigating factors do not outweigh aggravating factors, the jury must impose a death sentence. The statute states that the Court of Appeals shall consider whether "the evidence supports the jury's or court's finding that the aggravating circumstances are not outweighed by mitigating circumstances." § 414(e)(3).

## A

My initial concern is with the statute's treatment of mitigating factors. Under the statutory scheme, the sentencer can consider a mitigating factor only after the defendant has established its existence by a preponderance of the evidence. But the mitigating

---

[1] Under Rule 772A of the Maryland Rules of Procedure, which applies to all capital cases, the sentencer must make written findings. Section I of the verdict form asks, factor by factor, which, if any, of the aggravating factors the sentencer has found. Section II of the form similarly asks whether the sentencer has found each of the listed mitigating factors. At the end of Section II, in parentheses, the form states: "If one or more of the above in Section II have been marked 'yes,' complete Section III. If all of the above in Section II are marked 'no,' you do not complete Section III." Section III asks the sentencer to weigh aggravating and mitigating factors. Later, the verdict form states: "If Section II was completed and all of the answers were marked 'no' then enter 'Death.'"

factors set out in the statute[2] are not matters of historical fact—they are matters of legal and moral judgment. These factors do not "exist," and thus, unlike matters of historical fact, they are not easily proved or disproved. Each one rests on evidence that easily might influence the conclusion that death is proper, even if that evidence does not conclusively *prove* the statutory mitigating factor. For example, the sentencer might be influenced by evidence tending to demonstrate that the defendant acted under substantial duress, or it might even find that the defendant acted under moderate duress. Yet it would not necessarily find that the defendant had proved that he "acted under substantial duress." Similarly, the sentencer might find that the defendant was of impaired mental capacity, but it might not believe that the impairment was substantial at the time of death. Under the statute, the sentencer would find that the defendant had not proved these mitigating factors. As a result, *the sentencer would be prevented from considering any of the evidence adduced in an effort to meet the burden of proof*, because the statute permits consideration only of the factors proved by a preponderance of the evidence. To preclude the sentencer from considering such potentially influential evidence—as does the statute by denying any weight to evidence if the defendant does not convince the jury that a factor "exists" by a preponderance of the evidence—is to bar, as a matter of law, consideration of all mitigating evidence and influence and thus to violate *Lockett* and *Eddings*. Such a result can only enhance "the risk that the death penalty will be imposed in spite of factors which may call for a less severe penalty." 438 U. S., at 605.

---

[2] The mitigating factors are: no prior criminal conviction or plea of guilty or *nolo contendere* for a crime of violence; the victim was a participant in the defendant's conduct or consented to the act that caused the victim's death; the defendant acted under substantial duress, domination, or provocation of another person, but not so substantial as to constitute a complete defense to the prosecution; the murder was committed while the defendant's capacity to appreciate its criminality, or conform his conduct, was substantially impaired because of mental incapacity, mental disorder, emotional disturbance, or intoxication; the youthful age of the defendant at the time of the crime; the act of the defendant was not the sole proximate cause of the death; it is unlikely the defendant will engage in further criminal activity that would constitute a threat to society; and any other fact the jury or court specifically sets forth in writing that it finds as mitigating circumstances in the case. § 413(g).

The manner in which Maryland applies the statute exacerbates the problem. The petitioner here was 19 years old at the time of the crime in question. She had previously been found to be mildly retarded, and had been described as immature, impressionable, and as an abuser of a variety of drugs. The trial judge, who acted as sentencer, nevertheless found that petitioner had not borne her burden of proving, as mitigating factors, either (1) "the youthful age of the defendant"; or (2) that her mental incapacity, disorder, or disturbance inhibited her capacity to appreciate the criminality of her conduct or to conform to the requirements of law. Affirming the trial court on this matter, the Court of Appeals viewed the evidence in the light most favorable to the prosecution and held that a rational sentencer could have concluded that the accused failed to *prove* the claimed mitigating factors. Because of that failure of proof, the sentencer could not consider the fact that the defendant was 19 and had a certain mental history. Since the statute permits only that "these mitigating circumstances"—those outlined in the statute—shall be considered, the statute both on its face and in its application to petitioner denies her the full consideration that has become one of the keystones of reliability in the Court's death penalty jurisprudence.[3]

---

[3] Nor does the mere fact that the sentencer may find other mitigating circumstances to include in the balance, so long as it sets them forth in writing, salvage the statute. Initially, no sentencer, who has been told he may consider certain factors only if they are proved to him, will presume he is able to consider them if they are not proved. That result would render the burden of proof provision of the statute wholly meaningless, and cannot be presumed to be what the legislature had in mind. Additionally, it is wholly plausible that jurors will "intuit perfectly legitimate mitigating circumstances which they cannot articulate," see Weisberg, Deregulating Death, 1983 S. Ct. Rev. 305, 373, n. 262. A juror convinced that the evidence amounts to a mitigating factor "might stand mute, haunted by the defendant's look but unable to manufacture a reason for life." Ledewitz, The Requirement of Death: Mandatory Language in the Pennsylvania Death Penalty Statute, 21 Duquesne L. Rev. 103, 155 (1982). The statute requires that the jury conceptualize mitigation as a historical fact to be proved, rather than as the complex legal and moral judgment that our cases require it to be. As a result, those mitigating circumstances that might be too "intangible" for a legislature to define and include in a death statute must be ignored, unless the sentencer somehow can articulate that which the legislature could not. Cf. *Gregg* v. *Georgia,* 428 U. S. 153, 222 (1976) (WHITE, J., concurring in judgment) (noting that the

## B

In addition to compressing the sentencer's wealth of information on mitigation into a rigidly compartmentalized analysis, the statute also prevents a sentencer from answering the basic question: is death the proper sentence? The statute *requires* that death be imposed *whenever* mitigating circumstances do not outweigh aggravating circumstances. It leaves to the jury no room to consider whether death is the appropriate punishment in a specific case. And the sentencer is asked to fill out a form that expressly precludes such discretion.[4] As JUSTICE STEVENS has written in a similar context:

> "Literally read, however, those instructions may lead the jury to believe that it is required to make two entirely separate inquiries: First, do the aggravating circumstances, considered apart from the mitigating circumstances, warrant the imposition of the death penalty? [Under the Maryland scheme, the legislature has rendered this judgment.] And second, do the aggravating circumstances outweigh the mitigating factors? It seems to me entirely possible that a jury might answer both of those questions affirmatively and yet feel that a comparison of the totality of the aggravating factors with the totality of mitigating factors leaves it in doubt as to the proper penalty. But the death penalty can be constitutionally imposed only if the procedure assures reliability in the determination that 'death is the appropriate punishment in a specific case.'" *Smith* v. *North Carolina,* 459 U. S. 1056 (1982) (opinion respecting the denial of the petition for certiorari) (quoting *Lockett,* 438 U. S., at 601).

Georgia statute permitted the jury to dispense mercy "on the basis of factors too intangible to write into a statute").

[4] The statute requires the sentencer to return a sentence of death if *no* mitigating factors are proved by a preponderance of the evidence. Otherwise, the verdict form asks only one simple question: " 'Based on the evidence we unanimously find that it has been proved by A PREPONDERANCE OF THE EVIDENCE that the mitigating circumstances marked "yes" in Section II outweigh the aggravating circumstances marked "yes" in Section I.' " Pet. for Cert. 13 (quoting Rule 772A). The sentencer must answer "yes" or "no." The verdict form then tells the sentencer how to fill out the sentence recommendation blanks based solely on that "yes" or "no" answer; much like directions to an income tax form, the instructions do not make clear precisely why a given answer in one section requires a certain response elsewhere.

The Maryland statute unambiguously poses the problem to which JUSTICE STEVENS alluded; given that this statutory scheme explicitly bars the jury from considering whether it thinks death is a proper result in a given case, for whatever reason, the constitutionality of the statute is seriously in doubt.[5]

C

Finally, the statute, the sentencing form, and the statutory standard of appellate review all focus on whether the *mitigating* factors outweigh the aggravating factors, rather than vice versa. This language inevitably would lead a sentencing body to believe that the burden of proof rests on the defendant—who must prove mitigating factors—to prove that mitigating factors outweigh aggravating ones.[6] This is especially so in that the statute is silent

---

[5] Moreover, if we assume that this balancing process permits the sentencer to determine whether death is the proper result given the totality of the circumstances, this subsection of the statute is strikingly infirm. Since the sentencer need find that mitigating factors *outweigh* aggravating factors in order to be freed from the mandate of imposing a death sentence, if a sentencer merely finds that mitigating factors equal aggravating factors—that is, if it finds that death *may or may not* be the appropriate sentence—death shall be imposed. To permit a State to require a death sentence when the jury or court is not certain that the death sentence is appropriate simply undermines every precept this Court has enunciated in its quest for reliability in capital sentencing.

[6] The state court has not made clear that the contrary is true. In *Tichnell* v. *State*, 287 Md. 695, 415 A. 2d 830 (1980), the Court of Appeals wrote: "Because the State is attempting to establish that the imposition of the death penalty is an appropriate sentence, the statute places the risk of nonpersuasion on the prosecution with respect to whether the aggravating factors outweigh the mitigating factors." *Id.*, at 730, 415 A. 2d, at 849. This statement, made in dictum, curiously flips the statutory order of the words "aggravating" and "mitigating." The court implicitly recognized that the burden of proof was not immediately consistent with the wording of the statute. Yet this remark can hardly be read to require courts to place the burden on the prosecution on this issue, or to reverse the statutory order when addressing the jury. Indeed, the Court of Appeals has subsequently referred to the section as written in the statute. In this case, the court noted that it had met the statutory mandate of reviewing to assure that the evidence "supports the trial court's finding that the aggravating circumstance is not outweighed by the mitigating circumstance." 299 Md. 331, 374, 473 A. 2d 903, 924 (1984). Similarly, in an appeal after remand in the *Tichnell* case, the court discussed the final weighing phase of the sentencer's decision and wrote: "To persuade the jury to impose a life rather than a death

as to which party bears the burden of proof on this point. As a result, the criminal defendant faces a mandatory death sentence if he is unable to prove that the mitigating circumstances that he has been able to prove outweigh the aggravating factors previously found. This burden places the risk of error squarely on the defendant's shoulders, and on the side of execution. I had not understood the Constitution to permit the State to transfer such an excruciating burden to a defendant.

D

The State contends that this case presents the same constitutional issue raised by other petitioners to whom review was denied, and that certiorari is therefore inappropriate. Brief in Opposition 5. Were it a rule of thumb not to hear cases presenting issues that we had previously declined to hear, our caseload would no doubt be considerably lightened. That argument has never been, and surely could never be, dispositive. But of far greater import is the fact that the opinion to which the State refers, *Tichnell* v. *State*, 297 Md. 432, 468 A. 2d 1 (1983), cert. denied, 466 U. S. 993 (1984), did not address these issues directly; in an earlier opinion in that same case, *Tichnell* v. *State*, 287 Md. 695, 415 A. 2d 830 (1980), the court had addressed, although only in dictum, the issue actually presented here. The fact that the Court of Appeals relied on the reasoning in the earliest *Tichnell* to dispose of Stebbing's claim does not diminish the possibility that certiorari was denied in the last *Tichnell* because this issue was not addressed in that opinion. But, in any event, it is axiomatic that denials of writs of certiorari have no precedential value. *Hughes Tool Co.* v. *Trans World Airlines, Inc.*, 409 U. S. 363, 366, n. 1 (1973); *Maryland* v. *Baltimore Radio Show, Inc.*, 338 U. S. 912, 919 (1950) (Frankfurter, J.). The fact that we might have made a mistake in *Tichnell* should not compel us to make a mistake here too.

---

sentence, Tichnell wanted to convince it that the mitigating circumstances outweighed the aggravating circumstances." *Tichnell* v. *State*, 290 Md. 43, 61, 427 A. 2d 991, 1000 (1981); see also *id.*, at 62, 427 A. 2d, at 1000. It thus seems clear that the court has in no respect required that the statutory order of the two words be reversed, or that the sentencer expressly be informed that the prosecution bears the burden of proof on the point. The jury or court is left on its own to guess at the burden of proof on the ultimate question.

## III

I continue to adhere to my view that the death penalty is in all circumstances cruel and unusual punishment forbidden by the Eighth and Fourteenth Amendments. See *Gregg* v. *Georgia*, 428 U. S. 153, 231 (1976) (MARSHALL, J., dissenting); *Furman* v. *Georgia*, 408 U. S. 238, 314 (1972) (MARSHALL, J., concurring). But even if I did not, I would dissent from denial of certiorari in this case. A statute that poses any one of the issues sketched above would, to my mind, warrant review by this Court because of its inconsistency with our precedent. When a single capital sentencing scheme raises the number of serious questions that this one does, and when it so threatens to undermine the very reliability that this Court has identified as the keystone to the constitutionality of the death penalty, it seriously suggests that the State is arbitrarily sentencing defendants to death. To avoid that result, I would grant the petition. I respectfully dissent from the Court's refusal to do so.